Good morning, Your Honors. Patrick Ford on behalf of the appellant Samphone or Mike Nasserichampang. I'd like to reserve two minutes for rebuttal. All right. Thank you, Counselor. May it please the Court. I'd like to address today the issue of the ineffective assistance of counsel. The case, I believe, is suspect for two very basic reasons that I want to emphasize at the beginning of the argument. The first reason is that this case involved a 25-year-old defendant with no criminal record. Being charged with murder as an aider and abetter in a situation where his conduct was very much in question. He was represented by counsel with no prior trial felony experience, who admittedly was unprepared, did very little on his behalf, and even admitted that she was relying extensively on the efforts of co-counsel, who was presenting a defense which was, to say the least, implausible as it related to Mike Nasserichampang. The second point that's very basic here is that the only evidence connecting the appellant to the charged murder came from the testimony of the 15-year-old souk, whose testimony was essentially it was pressured by the police. Initially, the police, I think the most realistic assessment of the pressure that was given was that he was threatened with 10 years of custody in the California Youth Authority, which is no small thing. But before that threat, the police had made clear reference to his eligibility to the death penalty, to life in state prison. All of this was thoroughly explored in the trial itself. And his testimony wasn't a carbon copy of what he was expected to give or what he told the police. I mean, everything you're saying was explored in the trial. It was explored on a level, but perhaps if I said that there were two basic points, let me at least add a third. In the context of this trial, this was not a person that stood trial, obviously, by himself. But didn't his counsel, she submitted a declaration saying she had advised him of the possibility of severance. He didn't want to have a severed trial. Yes, she advised him of the possibility of severance, but any advice was completely ineffective. Because he demanded to go to trial with his brother? I'm sorry. Did he demand it? His idea. The joint trial was his idea over the advice of counsel. I don't believe that we can look to the advice of counsel in a situation where counsel was effectively unprepared. Did she join in the motion to sever? She never joined in the motion to sever because it was against her interest. She wasn't capable of handling this. She essentially admitted because of her lack of experience that she had hitched her wagon to the skills of co-counsel, who was presenting a very different case. And to the extent that she did advise him, that she claimed she advised him, her advice is worth nothing when it wasn't based upon any preparation. She didn't know effectively the merits of the case that she could have presented on his behalf. So she advised him. Yes, it was a hollow advisement. And all Mike knew, he was a person who was culturally challenged. He was scared to death. He was not familiar with the system. And all he knew was that his brother had a lawyer that was working hard on his behalf, and he did not. The only chance that he saw of being culturally ignorant and ignorant of the system was to somehow go to trial knowing that Mike's lawyer was working hard on his behalf and hoping that that would benefit him on some level. The State court essentially accepted the proposition that counsel's performance was below the standard of competence, but determined that. Especially because she let the severance motion remain unrolled upon on the ground of the conflicting interests. There were conflicting interests in this case. There were conflicting interests, antagonistic defenses. There were separate defenses that needed to be argued on behalf of each client. The irony is, is that Joy Nassery Champagne had only to argue because the evidence against him was so strong that he wasn't present at the incident. Whereas Mike had a very strong defense that it needed to be presented on his behalf. As it relates to prejudice, the court found that even though counsel, because of her lack of preparation, her conduct fell below the appropriate standard, that there was an alternative theory upon which he might have been convicted. And that alternative theory was the natural and probable consequences doctrine, which was articulated in the Prettyman case by the California Supreme Court, which says that an aider and abetter may be convicted not just based on his assisting a principal in an intended act, but also in an unintended act, is a natural and probable consequence of the intended act. We would suggest that there are two reasons why that principle doesn't apply in this case. And the reasons come directly from the Supreme Court's pronouncements regarding that theory, the first being Prettyman and the second being McCoy. The court in each case makes clear that the doctrine applies only to a jury that has been And the jury is given a chance to make a finding that the unintended act was in fact a natural and probable consequence of the intended act. I hope I said that properly. The second point, reason why it doesn't apply, is that while Prettyman says, and McCoy adopts the language in Prettyman, that it can be applied in a circumstance where the intended consequence was an assault or a fight, the only cases that actually allow the theory to go forward are cases in which the principal in the assault or the fight used a deadly weapon and the aiders and abetter had knowledge that he was armed, that the principal was armed with the weapon prior to the incident itself. The problem in this case is that the only evidence that Mike Nassery Champagne had knowledge that his brother was armed with a gun came from Suk, who initially denied that Mike had any knowledge. And then after the pressure, the threats and promises from the police Again, which the jury heard. Which the jury heard, correct. But we're suggesting, and I think it's important to keep in mind here also, that this was not, this is unreliable testimony. Whether or not it's coerced within the meaning of the Fourteenth Amendment, we clearly believe it was. But regardless, it was a product of pressure and it was unreliable. And we would note that this was... But the jury just was wrong to accept it. I don't think the jury was fully, because of counsel's failure to present this properly, I don't think that we can look to that as we normally would. The important point here is that it is not testimony that was used, unreliable testimony that was used to corroborate other reliable testimony, which is often done and which is fair. But this was the testimony, unreliable testimony, which stood alone to present the key fact of his knowledge. And it was, there was no attempt to corroborate it otherwise. I'd like to make just a couple of points about the district court's opinion on the issue. The first is that the Prettyman and McCoy holdings are dispositive. They're not for the reasons we just mentioned. Secondly, the court said, well, even assuming counsel did nothing, she was at least equipped with the transcripts of the interrogations between Suk and the police, and she therefore could have cross-examined Suk at trial. And we suggest that she was not prepared to effectively cross-examine him, that her cross-examination was nothing more than a couple of pages where she asked questions about whether he expected a benefit in return for his testimony. She never got into the inconsistencies in the evolution of the story, which ended up to be quite damning. And she never interviewed the witnesses which would have disputed with what Suk would have said. Those included Ben Hill, the victim's associate who said, who testified that there was only one person that got out of the car at the time of the incident, meaning Mike never got out of the car. Cesar Salavaria, who was in the car with Mike and Joy and Suk, who would have testified that there was no knowledge that Joy had a gun, that he just pulled it out without their knowledge. We would also remind the court that the state court got the facts wrong by suggesting that Cesar Salavaria was awaiting trial. He was not. He had already pled guilty in the case. He had no reason not to present his statement. And even if he were awaiting trial, testifying, there's no reason to think he would have asserted the Fifth Amendment waiver when presenting the issue that nobody in the car had knowledge that Mike had the gun. And the third point regarding the district court's opinion is that the jury necessarily found that Suk was credible. And that's the point that I think the court was troubled with. They made no such finding that he was credible. The jury was presented with alternative theories. The first from an unreliable Suk, who this is not a person that juries would normally tend to believe. He was a gang member who was highly unreliable and changed his story at will, essentially, certainly changed it after the pressure. And they were confronted with the alternative version from defense counsel, who suggested not that Mike lacked knowledge of what Joy was up against, but that he wasn't there. There was overwhelming evidence that Mike was at the scene, that he participated, that he drove his brother to this incident. So when faced with these two theories, one of which was unreliable and the other which was totally implausible, they rejected the implausible. But that's not to say that they accepted the unreliable. And if she had done a competent job of presenting the case, there would have been an unreliable version, and then there would have been a competent version fully explaining his participation at the scene. I'd like to reserve my time. Well, you're over your time, so thank you very much, counsel. Fifteen powerful seconds, I'm sure. I never did. Good morning. May it please the Court. I'm Kevin Viena, Deputy Attorney General for the California Department of Justice, arguing for respondent appellee in this matter. Just a couple of points. One question from the Court was whether Somfone joined in the severance motion. He did indeed join in the severance motion. That's clear in the excerpts of record, page 66. But the Court also was correct in noting that that counsel did not fully explain what contradictory or conflicting defense might have been made. That wasn't presented to the trial court. What is clear, though, is that defense counsel had investigated a no-knowledge defense. In fact, the declaration that the Court referred to, and I think is in my excerpts of record at page 524 and 525, said she'd tried 100 misdemeanor cases, had taught criminal law, had talked to both Somfone and to his family, wanted him either to plead guilty or encouraged him to engage in this alternative defense, and he steadfastly insisted he would not because he would not incriminate his brother, would not convict his brother in this crime. So defense counsel had faced a difficult circumstance in deciding or in preparing for her. That's why severance would have been the best, in her client's best interest. Well, and she tried. Severance might have, she'd have had a better argument for severance, but not one that necessarily would have prevailed. And he still may not have cooperated because the prosecution could have chosen to try him first, and he would have condemned his brother in that circumstance by the defense he presented, or a defense that would have required him to take the witness stand. Now, another point that I think is essential to examining the issue of counsel performance and prejudice is Mr. Ford says that Suk was not believable, and they attacked his credibility thoroughly throughout the trial. The joint and interlocking defense attacked his credibility strongly. The problem for Somfone is that the alternative defense would have solidified the believability of Suk. That is, they had evidence at trial, presented evidence of an alibi. That is, two witnesses who apparently had no reason to be dishonest, two neighbors of Somchit's girlfriend, said that he was present at a cookout at the time of the killing. Now, they turned out not to be believable because they were late in presenting this evidence, or at least they were impeachable because of that, that they hadn't come forward with that earlier. But there was other strong evidence that would have connected or that tied both Somchit and Somfone to the crime. There's the whole motive evidence, the building fight between the decedent and Somchit. And then we have several witnesses who saw Somfone's car there. But to have presented the alternative defense would have strengthened completely the credibility of Suk. There would have been no attack on his credibility at that point, other than to say, well, he was truthful about going with Somfone. He was truthful about the anger telephone call immediately preceding the shooting between Somchit and Somfone. He was truthful that they went there and Somchit jumped out of the car and shot. But he's untruthful about two aspects of it. One is that Somchit displayed the gun when he got into the car, so that Somfone would have seen it. And similarly, he was untruthful when, and I believe this happened only at trial, he said that Somfone said, shoot him, shoot him. Now, there is no suggestion of a motive for him to have set up Somchit and Somfone with regard to presence at the killing and to have lied about Somfone's knowledge of the presence of the gun and having stated to his brother, shoot him. So a jury would have found exactly the same way if the case had been tried differently. So the state court determination was eminently reasonable. And the determination, the very careful and thorough examination by the magistrate judge and then again by the district court judge, saying that there was no prejudice, reinforces that determination that it was a perfectly reasonable determination by the state court. If the court has no other questions, then I'll conclude. Thank you. All right. Thank you very much, counsel. Nazary-Champagne v. Woodford is submitted. And we'll take what? Oh, you have 16. Oh, he thinks. Okay. All right. Thank you, Your Honor. I'd only say that, first of all, as to the severance motion, I think an important fact is that severance had already been granted on the Cesar case. So there was already two trials set up. It wouldn't have been a burden to include some phone in that case. And also we just strongly make the point that there was overwhelming evidence that he was present at the scene. The fact that Suk had testified that they were present, I think, was of little significance. The only question that the jury cared about was whether or not Mike had knowledge that Joy had the gun. That was the key point. And I think that it was important that he be cross-examined on that point. Thank you. All right. Thank you very much, counsel. The case will be submitted now. And we'll take up Dubai-Gestupa v. Robinson Helicopter.
judges: Trott, Wardlaw, Fisher